# No. 22-3205(L)
## No. 23-50 (CON)

United States Court of Appeals
for the Second Circuit

———

**Jodi Rouviere, individually,**

**Plaintiff-Appellant,**

**Andre Rouviere, Jodi Rouviere's husband, individually,**
**Plaintiff,**

**vs.**

**Howmedica Osteonics Corporation, DBA Stryker Orthopaedics, Inc.,**
**Defendants-Appellees.**

———————

On Appeal from the United States District Court for the
Southern District of New York (The Honorable Lewis J. Liman)

### APPELLANT'S PETITION FOR PANEL REHEARING
### OR REHEARING EN BANC

Jodi Rouviere
10950 Southwest 84th Court
Miami, FL 33156-3526
(305) 608-8076
jodi.jtm@gmail.com
*Appearing Pro se*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………ii

RULE 35(B) AND INTRODUCTION ........................................................1

PROCEDURAL HISTORY AND BACKGROUND………………………1

**THE PANEL'S INTERPRETATION IMPROPERLY EXPANDS THE SCOPE OF CPLR 214-c(2) TO DEEM PLAINTIFF ON NOTICE OF AN UNDIAGNOSED AND UNDIAGNOSABLE PRIMARY INJURY BASED UPON GENERALIZED, NON-SPECIFIC MEDICAL COMPLAINTS AND WOULD EVISCERATE CPLR 214-c(2)'S INTENT AND PURPOSE TO PRESERVE A RIGHT OF ACTION FOR LITIGANTS LIKE PLAINTIFF SUFFERING FROM LATENT INJURIES..**…………..………………………….………..………………..2

REASONS FOR EN BANC REVIEW………………………………………..6

CONCLUSION……………………………………………………………….14

CERTIFICATE OF COMPLIANCE………………………………………..16

CERTIFICATE OF SERVICE……………………………………….…17

i

# TABLE OF AUTHORITIES

**Cases:**                                                    **Pages:**

*Matter of New York Cnty. DES Litig.,*
678 N.E.2d 474 ……………….................................................4

*Grill v. Philip Morris USA, Inc.,*
653 F. Supp. 2d 481, 487 (S.D.N.Y. 2009)………………………………4


**Statutes and Other Authorities:**                           **Pages:**

CPLR 214-c(2)………………………………………………………passim

Fed. R. App. P. 35(a)……………………….……………….…………..1

W. PROSSER & W. KEETON, (supra note 2, § 30, at 166)……..………..14

Article: "The Mechanism of Metallosis After Total Hip Arthroplasty"…….3, 11

FDA Publication: "Biological Response to Metal Implants"…………..……3, 11

## RULE 35(b) AND INTRODUCTION

Pursuant to the Federal Rules of Appellate Procedure, "[a]n en banc hearing…is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain the uniformity of the court's decisions; or (2) the proceeding involved a question of exceptional importance." Fed. R. App. P. 35(a). This appeal is the rare instance where both conditions are unequivocally met.

## PROCEDURAL HISTORY AND BACKGROUND

The Appellant and her husband filed an amended complaint against the Appellees. The complaint sought damages for severe and permanent personal injuries from metallosis resulting in ion-induced metal toxicity and related injuries (necrotic tissue, pseudotumors, etc.) and others. The injury suffered by the Plaintiff was caused by excessive metal wear due to metal-on-metal impingement from the devices manufactured/sold by Defendants. [ECF26¶¶126–28; ECF233 at 3]

On September 17, 2021, the court below granted summary judgment in favor of DePuy on all counts. The court below granted summary judgment in favor of Stryker on December 6, 2022, and a final judgment was entered in favor of Stryker by the lower court.

On December 22, 2022, the Appellant filed a notice of appeal of the final orders entered by the court below. On December 30, 2022, the Appellant filed an

amended notice of appeal. On January 4, 2023, a final judgment in favor of DePuy was entered. On January 10, 2023, the Appellant filed a Second Notice of Appeal from the January 4, 2023, final judgment.

On May 30, 2023, the Appellant filed her Appeal Brief. On August 29, 2023, Appellees Depuy and Stryker filed their briefs in opposition. On September 12, 2023, the Appellant filed her Reply Brief. On April 2, 2024, Appellant attended Oral Argument.

On April 5, 2024, this Appellate Court ordered its Summary Order and Judgement (Exhibit 1), the Order which is the subject of this motion.

## I. THE PANEL'S INTERPRETATION IMPROPERLY EXPANDS THE SCOPE OF CPLR 214-c(2) TO DEEM PLAINTIFF ON NOTICE OF AN UNDIAGNOSED AND UNDIAGNOSABLE PRIMARY INJURY BASED UPON GENERALIZED, NON-SPECIFIC MEDICAL COMPLAINTS AND WOULD EVISCERATE CPLR 214-c(2)'S INTENT AND PURPOSE TO PRESERVE A RIGHT OF ACTION FOR LITIGANTS LIKE PLAINTIFF SUFFERING FROM LATENT INJURIES

In the summary order affirming the district court's summary judgment dismissal of the Plaintiff's case, this Court has expanded the interpretation of the court's role by subjectively choosing to allow generalized, non-specific pre-existing and co-existing medical complaints ("symptoms"), not related to the primary injury claimed in this case, to trigger the statute of limitations. This is contrary to the language and intent of CPLR 214-c(2).

It is undisputed that the Plaintiff's primary injury is metallosis. Metallosis is the infiltration of metal debris into the tissue surrounding a metal implant. Metallosis is asymptomatic and can only be diagnosed through its visual observation in open surgery (See, Table 1. and Table 2.). The Plaintiff was first diagnosed with metallosis on November 11, 2016, during an exploratory surgery at which time her implant was immediately revised.

The district and appellate courts have ruled to ignore the plain language and intent of CPLR 214-c(2), unjustly dismissing the Plaintiff's case. They claim that the statute of limitations expired long before the Plaintiff's metallosis injury could have possibly been diagnosed based on the existing medical, scientific, and technological state of the art. This Court cited a new 2021 article related to metal-on-metal implants[1] to bolster its summary titled, "The Mechanism of Metallosis After Total Hip Arthroplasty", which referenced current technological, and scientific information, including the FDA's 2019 guidance, "Biological Response to Metal Implants". This new article and the FDA's guidance *oppose* the courts' findings and *directly* align with the Appellant's argument that since metallosis is asymptomatic (See Table 1), *none* of Plaintiff's symptoms from 2012-2014 can be attributed to it, and since metallosis can only be discovered by open surgery, she

---

[1] Plaintiff's implant was ceramic-on-polyethylene, not metal-on-metal, but still imposed the same risks as a metal-on-metal implant.

could not have known she had it until 2016. Plainly stated, this Court has ruled that under CPLR 214-c(2), the Plaintiff's right to file a claim for redress expired before any viable cause of action ever accrued.

Specifically, "CPLR 214-c(2) refers to **'discovery of the injury' as "discovery of the condition on which the claim was based,"** according to the legislative history. Just "**any**" symptom is **insufficient** to trigger the statute of limitations under CPLR 214-c(2). **The symptom must notify the plaintiff of the "primary condition on which the claim is based."** (Matter of New York Cnty. DES Litig., 678 N.E.2d at 475; see Grill v. Philip Morris USA, Inc., 653 F. Supp. 2d 481, 487 (S.D.N.Y. 2009)).

The courts have expanded the discovery rule to consider complaints, which have been proven *not* to be associated "symptoms" of the Plaintiff's primary injury of metallosis, thereby removing the question of fact from the jury's domain, clearly limiting this preemptive blockade (See, Table 1. and Table 2). Allowing generalized, non-specific complaints, as in the present case, to trigger the statute of limitations under CPLR 214-c(2) violates the crucial requirement of, "were so generalized and episodic that they did not constitute the primary condition upon which the claim was based." [Summary Order, p.13]

There is no conceivable way, and certainly no evidence, to suggest that the Plaintiff or her physicians could have been or were on notice that she had

metallosis based upon the various complaints she made to her doctors before its observation in November 2016. In fact, the complaints documented in her medical records from 2012-2014 were not "symptoms" of metallosis, particularly considering that there is no evidence that metallosis existed from 2012 to 2014, but of Ms. Rouviere's other conditions and disabilities not claimed in this litigation (See, Table 1. and Table 2.).

Again, the Plaintiff's primary injury, metallosis, results from the deposition of metal debris in tissue and it is asymptomatic. The Plaintiff underwent implantation in 2012, and her metallosis was first medically identified when it was visualized by her surgeon during open exploratory surgery in 2016.

The courts have, as a matter of law, determined that the Plaintiff did have metallosis, and knew or should have known that she had metallosis, by 2014. The courts based this on upon unrelated, generalized, and non-specific "symptoms" the Plaintiff suffered between 2012-2014 cherrypicked by the court. This determination is contrary to the diagnoses by Plaintiff's treating physicians and to the medical, scientific, and technological state of the art of the impossibility of diagnosing or confirming the existence of metallosis until discovered in open surgery. The courts' conclusions conflict with the intent and letter of the rule and by creating a situation where the injured party's statute of limitations in a latent exposure case would expire before a cause of action ever accrues.

The Appellant respectfully requests a panel rehearing or rehearing en banc due to the courts' failures to identify the material facts required under CPLR 214-c(2) or relied upon in determining, as a matter of law that the plaintiff had metallosis prior to her diagnosis in November 2016, and that Plaintiff knew as a matter of law that she had metallosis before November 2016. The points of law and facts the courts have overlooked and misapprehended and the questions of material fact that remain are:

1. Can the Court rely upon generalized, non-specific medical complaints or "symptoms" unrelated to the primary injury to determine as a matter of law that the discovery of the primary injury has occurred and triggered the statute of limitations pursuant to CPLR 214-c(2)?

2. What medical complaint or "symptom" between 2012-2014 does the Court point to was relevant and linked to, or associated with, a diagnosis of metallosis that proved that Plaintiff had metallosis, and put her on notice that she had metallosis, so clearly that the Plaintiff does not have a right for the jury to determine the issue?

Which symptom from 2012 to 2014 did the courts base their conclusion of fact on, asserting that a symptom was relevant to metallosis and the Plaintiff should have known she had metallosis? Was it one of these?

- Vertigo, diagnosed as being caused by a virus?
- Headaches, complaints to a neurosurgeon after a 4-level cervical fusion?
- Heaviness in arms and legs, itching on the face/head, urinary urgency? (See, Table 1. and Table 2.)

Again, there is no medical condition or "symptom" that identifies, is so clearly linked to, or is associated with metallosis, that should have put the Plaintiff on notice that she had metallosis before its diagnosis in 2016. Further, this Court in

its Summary Order claimed that Plaintiff should have been on notice of the mechanical "impingement" from unspecified "symptoms" indicated in her medical records between 2012-2014. [Summary Order-276, p.7] To the extent this Court might have considered mechanical impingement as the primary injury, the district court found differently. The district court identified the Plaintiff's primary condition as metallosis distinct from "mechanical symptoms" of impingement, falling under C.P.L.R. 214-c(2), discovering metallosis as the issue, not the device's failure. [Reply Brief for Plaintiff-Appellant, p.4, 5]

Moreover, the metal-on-metal mechanical impingement was specifically designed into Stryker's devices which Stryker falsely represented as a ceramic-on-polyethylene dual mobility device that minimized risks of metal-on-metal. [2] [3] [Appeal Brief, p. 15] Accordingly, mechanical consequences imposed by this faulty metal-on-metal impingement, planned into its design, would not put the Plaintiff on notice of her primary injury, metallosis.[4]

---

[2] Stryker's internal documents, withheld from implanting surgeons, state that "In dual mobility systems, neck impingement is part of the system's function, and the related wear is a clinically relevant preoccupation." [Appeal Brief, p.16]

[3] The Plaintiff and her surgeons shouldn't be expected to be aware of the serious risks associated with metal-on-metal devices that STRYKER DELIBERATELY HID and failed to provide as evidence for their claims of symptoms related to metallosis.

[4] This presents a contradiction in the courts' rulings. The district court agreed that the Plaintiff was unaware of symptoms until May 2015, and that the first confirmed diagnosis of metallosis was in November 2016. [ECF351, p.23-24]

This Appellate Court blindly and conveniently accepted that the district court based its decision on the bald assumption that the Plaintiff "did not dispute that she had relevant symptoms from 2012-2014." The "symptoms" referenced were complaints from Plaintiff's medical records during that period, but they were never claimed by Plaintiff or proven to be symptoms of her metallosis (See Table 2.).

Instead, they were symptoms related to the Plaintiff's severe cervical spinal injury that occurred in February 2013. Plaintiff suffered a traumatic cervical dislocation resulted in a subsequent four-level emergent fusion surgery. This severe injury imposed "symptoms" chronicled in Plaintiff's medical records that included, chronic and severe pain in her head, back, neck and shoulder, her inability to hold up her head or move her neck, dizziness, nausea, vomiting and vision and cognition changes. The unsuccessful surgery left her cervical spine unstable and throughout 2013-2016 she continued to suffer severe symptoms including cerebrospinal brain fluid leaks which completely debilitated the Plaintiff and caused severe and chronic neurological symptoms such as dizziness, vertigo, nausea, vomiting, limb weakness and pain, severe headaches and neck pain, tingling in the head and face and tinnitus. The Plaintiff also suffered from cervically-related cognitive symptoms; tremors, blurred vision, visual flashes and halos, speech difficulties, hoarseness, choking, imbalance, poor coordination,

dysphagia, and dysautonomia manifest by heart palpitations. In 2014, a cranium to C1/C2 fusion was recommended by a neurosurgeon. Rouviere declined, resulting in her suffering severe and chronic symptoms even to this day (See Table 2.).

Finally, the court attempted to rely upon Plaintiff's allegations made after the 2016 diagnosis of metallosis to bootstrap its arbitrary, subjective determination that Plaintiff's unrelated, generalized non-specific "symptoms" were related to, and somehow clearly indicative of knowledge of her metallosis injury (asymptomatic) prior to 2015. [Summary Order, p. 5, 7] A party's allegations or admissions made after the diagnosis of a latent condition do not change the unrelated, generalized, non-specific medical complaints into symptoms that are so clearly linked to or associated with the discovery of the primary injury pursuant to CPLR-214 c(2). Otherwise, CPLR-214 c(2) would prohibit the right to redress of any litigant that includes a claim for any symptoms that existed more than three (3) years before the diagnosis or discovery of a latent primary injury.

The consideration of arbitrary, generalized non-specific medical complaints that pre-exist or co-exist during the latency period considered by CPLR-214 c(2), if applied in the manner considered in this case, would obstruct eggshell litigants from the protections provided by the subject rule and illegally prevent their right to redress.

The courts' sweeping misapplication of ***any and all*** symptoms from 2012-2014 inaccurately associates as a matter of law, symptoms from Ms. Rouviere's unclaimed and unrelated pre- and co-existing conditions and cervical spinal injury with metallosis of the hip tissue.[5]

---

[5] Ms. Rouviere's medical history was included in the Rule 56.1 statement which the court misinterpreted by conflating all "symptoms", in direct contradiction to the medical diagnoses that the "symptoms" were diagnosed relating to her other existing or co-existing conditions and cervical spinal injury and were never claimed as relating to her hip and this case (See, Table 2).

# Tables

## Table 1. METALLOSIS IS ASYMPTOMATIC

| ASYMPTOMATIC METALLOSIS | SOURCE |
|---|---|
| **"There are no specific clinical signs or symptoms that indicate metallosis;"** | 2021 article cited by this Court, [The Mechanism of Metallosis After Total Hip Arthroplasty, p. 4] |
| Metallosis can be "completely asymptomatic" and "completely painless". | Dr. Buly, Implanting surgeon, [ECF231-1, p.143:19-23] |
| Metallosis is a broad term not limited to clinical implications. | C. Hefferman, Stryker's corporate representative [ECF346-22, p. 232:21-24] |
| Ms. Rouviere's metal ion blood levels are characteristic of asymptomatic patients with well-functioning implants not causally linked to adverse health effects. | Dr. Kosnett, Stryker 's toxicologist, [ECF346-14, p. 9] |
| Adverse events to metal-on-metal mimic normal responses.<br><br>Asymptomatic patients' management is limited to monitoring implant function and patient outcomes.<br><br>There are no FDA-approved/cleared tests or reliable tools to diagnose patients' responses to metal implants. Metal ion levels, radiographic findings, and clinical symptoms show poor correlation.<br><br>Identification of at-risk patients and management of symptomatic patients remains contentious, largely because testing methods, including metal ion levels, fail to identify those at high risk.<br><br>Consequences of metallosis require a biopsy of the tissue and device removal. | FDA publication (2019) [Biologic Response to Metal Implants, p. 31, 56, 73, 74, 78, 84, 87] |

**Table 2. MS. ROUVIERE'S 2012-2014 UNRELATED AND UNCLAIMED DIAGNOSED SYMPTOMS, CONDITIONS AND DISABILITIES**

| Date | Complaints | Medical Diagnosis in Treatment Records | Symptom associated, linked, or related to Metallosis |
|---|---|---|---|
| Preexisting (Before Implant, 2012) | Chronic: bilateral hip pain, neck popping, instability, laxity | (2009-2011) Right hip break, multiple bilateral hip surgeries [ECF334, p. 1-2 (#1, #2, #4)] | No |
| Preexisting (Before Implant, 2012) | Chronic: headaches, bilateral hip pain, instability and laxity in shoulder, knee, hand, dislocations, hand surgery | Ehlers-Danlos Syndrome Connective Tissue Disorder [EC334, p. 2 (#3), 341-1, p.4 (#36, #37, #38)] | No |
| September 2012 | Dizziness, nausea, vertigo | Went to ER, viral infection, no medicine or follow-up [EC334, p. 2 (#7), ECF341-8 (JR:BHOM:002240, 002234-002251)] | No |
| February 2013 | Chronic, severe pain: head, back, neck, shoulder, unable to hold or move head and neck, hands weak and numb Unsuccessful cervical fusion surgery; CSF leaks, dizziness, nausea, vomiting, vision, cognition changes | Spontaneous four-level cervical spinal dislocation, Anterior cervical discectomy, and fusion surgery at C3-C7, related to Ehlers-Danlos Syndrome [341-1, p.5 (#39, #40)] | No |
| March 2013 | Vision issues, eye pain, sinus pressure, headaches | Posterior vitreous separation, retinal tear/detachment related to Ehlers-Danlos Syndrome [AA-1016-1017] | No |

| | | | |
|---|---|---|---|
| October 2013 | Heaviness in limbs, itchy head/face, slowed down in general | Cervical spine instability and Ehlers-Danlos Syndrome [ECF-334, p.3 (#11)] | No |
| February 2014 | "Functional neurological decline" | Cervical spine instability, Ehlers-Danlos Syndrome [ECF-334, p. 3 (#13)] | No |
| June 2014 | Complete debilitation; Severe and chronic neurological symptoms; dizziness, vertigo, nausea, vomiting, limb weakness/pain, head/neck pain, weakness, tingling head/face, tinnitus. Cognitive symptoms; tremors, blurred vision, visual flashes/halos, speech difficulties, hoarseness, choking, imbalance, poor coordination, dysphagia, dysautonomia manifest by heart palpitations | Cerebrospinal brain fluid leaks, Craniovertebral/atlantoaxial subluxation/instability; severe instability Cl/C2, cervical medullary syndrome with Ehlers-Danlos syndrome. Cranium to C1/C2 fusion was recommended. Rouviere declined, resulting in severe and permanent disability. [341-1, p.5-7 (#42, #43, #44, #45), ECF346-7, p. 7-22] | No |

## CONCLUSION

Simply stated, CPLR-214 c(2) intends to preserve the right of action for litigants affected by tortious acts where the primary injury is latent and undiscoverable by staying the accrual of the statute of limitations until discovery of the primary condition can be reasonably made. While the courts have recognized that certain symptoms that are so well linked to or associated with the primary injury as to put the injured party on notice of the existence of the primary injury, the courts here have expanded that rule to hold that any generalized non-specific symptoms can be designated as "related" and can therefore trigger the accrual of the statute of limitations, even where the court's designation of the symptoms as "related" is contrary to all of the medical and scientific evidence. Such an interpretation as applied here would cause the statute of limitations to run before the primary injury is medically, scientifically, or technologically capable of identification, diagnosis, or discovery. A statute of limitations cannot begin to run against a cause of action before a cause of action exists. (W. PROSSER & W. KEETON, supra note 2, § 30, at 166)

If there is any question whether any of the medical complaints ("symptoms") relate to the main claimed injury, metallosis, including those medically diagnosed as related to Plaintiff's other conditions and severe cervical injury, then at most it presents a factual question for a jury and certainly not one that can or should be

made by the courts as a matter of law (CPLR 214c(2)). Accordingly, the summary judgment must be overturned and, if there are issues of the potential relation of the "symptoms" from Plaintiff's medical records between 2012-2014, those should be resolved by a jury.

### D. The Panel's Decision is Inconsistent with ATS Jurisprudence in the Circuit and Requires En Banc Review.

The profound breadth of the panel's decision is apparent when it is read against the New York State Statute CPLR 214-c(2), the statute governing the injury discovery rule in the instant case. If followed, the panel's reasoning would clearly curtail the reach of CPLR 214-c(2), preventing an injured party like the Appellant from recovering damages against Appellees for a latent primary injury which had no symptoms until an operation was performed to discover the metallosis.

Thus, the panel's decision requires en banc review.

For all these reasons this Court should grant the Petition.

Respectfully submitted,

Jodi Rouviere
10950 Southwest 84th Court
Miami, FL 33156-3526
(305) 608-8076
jodi.jtm@gmail.com
*Appearing Pro se*

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)(7)(C)

1.      This Petition complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because this brief contains 3101 words, excluding the parts of

the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This Petition complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

this Petition has been prepared in a proportionally spaced typeface using

Microsoft Office Word 2010 in 14-point Times New Roman font.


Dated: April 19, 2024                              *//ss// Jodi Rouviere*
                                                   Jodi Rouviere
                                                   10950 Southwest 84th Court
                                                   Miami, FL 33156-3526
                                                   (305) 608-8076
                                                   jodi.jtm@gmail.com
                                                   *Appearing Pro se*

## CERTIFICATE OF SERVICE

I certify that on April 19, 2024, the foregoing Petition for Rehearing and Suggestion for Rehearing En Banc was served on all parties or their counsel of record through their designated email listed below:

**Paul E. Asfendis, Esq.**
**Kim M. Catullo, Esq.**
One Pennsylvania Plaza, 37th Floor
New York, New York 10119
Tel.: (212) 613-2000
**Email: PAsfendis@gibbonslaw.com**
*Attorneys for Appellee*
*Howmedica Osteonics Corp.*

**Joseph G. Eaton (#15731-29)**
**J.T. Larson (#31392-29)**
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
**Email: joe.eaton@btlaw.com**
**jt.larson@btlaw.com**
*Attorneys for Appellee*
*DePuy Orthopaedics, Inc.*

April 19, 2024

*//ss// Jodi Rouviere*
Jodi Rouviere

Exhibit 1

22-3205-cv (L)
Rouviere v. Depuy Orthopaedics, Inc

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-four.

PRESENT:
      REENA RAGGI,
      EUNICE C. LEE,
      BETH ROBINSON,
         *Circuit Judges.*

_____

JODI ROUVIERE, individually,

      *Plaintiff-Appellant,*

ANDRE ROUVIERE, Jodi Rouviere's husband, individually,

      *Plaintiff,*

      v.                      22-3205 (L)
                                    23-50 (Con)

HOWMEDICA OSTEONICS CORPORATION,
DBA STRYKER ORTHOPAEDICS, DEPUY
ORTHOPAEDICS, INC.,

        *Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT:            JODI ROUVIERE, *pro se*, Miami, FL.

FOR DEFENDANT-APPELLEE HOWMEDICA:     Paul E. Asfendis, Kim M. Catullo, Gibbons P.C., New York, NY.

FOR DEFENDANT-APPELLEE DEPUY:        Joseph G. Eaton, J.T. Larson, Barnes & Thornburg LLP, Indianapolis, IN.

Appeal from a judgment of the United States District Court for the Southern District of New York (Lewis J. Liman, *J.*; Stewart D. Aaron, *Mag. J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 4, 2023 judgment of the district court is **AFFIRMED**.

\* \* \*

2

Appellant Jodi Rouviere, who was represented by counsel below but is proceeding *pro se* on appeal, sued two medical device companies, Howmedica (a.k.a. Stryker) and DePuy, for products liability and breach of warranty in 2018. Rouviere suffered complications from her hip replacement in 2012 after parts made by Stryker and DePuy allegedly impinged upon one another and eventually caused a wide variety of issues, including metallosis.[1] The district court granted both defendants' motions for summary judgment—DePuy's based primarily on lack of expert evidence and proximate causation, and Stryker's based on the statute of limitations. *See generally Rouviere v. DePuy Orthopaedics, Inc.*, 560 F. Supp. 3d 774 (S.D.N.Y. 2021); *Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157

---

[1] "Metallosis is defined as the accumulation and deposition of metallic particles secondary to abnormal wear from prosthetic implants that may be visualized as abnormal macroscopic staining of periprosthetic soft tissues. This phenomenon occurs secondary to the release of metal ions and particles from metal-on-metal hip implants in patients with end-stage osteoarthritis. Ions and particles shed from implants can lead to local inflammation of surrounding tissue and less commonly, very rare systemic manifestations may occur in various organ systems." Chinedu C. Edu, et al., *The Mechanism of Metallosis After Total Hip Arthroplasty*, 7 Regenerative Eng'g & Translational Med. 247, 247 (2021), https://link.springer.com/article/10.1007/s40883-021-00222-1 [https://perma.cc/E324-RV2L].

3

(S.D.N.Y. 2022).  Rouviere appealed.[2]  We assume the parties' familiarity with the remaining underlying facts, procedural history, and issues on appeal.

## I.     Standard of Review

We review decisions granting summary judgment, including those based on a statute of limitations defense, *de novo*.  *Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 78 (2d Cir. 2019).  Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.*  *Pro se* submissions are liberally construed to raise the strongest arguments they suggest.  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017).  "We may affirm on any ground with support in the record, including grounds upon which the district court did not rely."  *Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (internal quotation marks and citation omitted), *cert. denied*, 143 S. Ct. 1056 (2023).

---

[2] Rouviere's husband was a plaintiff in the district court but has not appealed the district court's dismissal of his derivative claim for loss of consortium.

## II.    Statute of Limitations

We affirm the district court's summary judgment decisions for both Stryker and DePuy on limitations grounds.    The record reveals no genuine dispute of material fact that the relevant symptoms began before May 2015.    Rouviere's 2018 complaint is therefore time barred.

### a.    DePuy Raised the Defense Below

We may affirm summary judgment for DePuy based on the statute of limitations because DePuy raised the affirmative defense in its answer to the amended complaint.    Accordingly, the defense was preserved.    *See Kulzer v. Pittsburgh-Corning Corp.*, 942 F.2d 122, 124–25 (2d Cir. 1991); *see also Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999) (considering qualified immunity affirmative defense on appeal where defendants-appellees did not raise the defense in their summary judgment motion but did so in their answer).    Rouviere also had an opportunity to respond to the argument below in her opposition to Stryker's motion for summary judgment.    *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (addressing notice and opportunity to respond).    Furthermore, the arguments regarding limitations are identical for both defendants.

5

**b.      Applicable Law on Statutes of Limitations**

The parties agree a four-year statute of limitations applies to Rouviere's

breach of warranty claims, pursuant to N.Y. U.C.C. § 2-725.  A breach of warranty

claim accrues "when tender of delivery is made" regardless of "the aggrieved

party's lack of knowledge of the breach." *Id.* § 2-725(2).  "There is no provision for

an extension of the limitations period linked to the discovery of the breach." *Meyer*

*v. Seidel*, 89 F.4th 117, 129 (2d Cir. 2023).

The parties agree that New York law applies to Rouviere's diversity suit,

but they dispute which of two statutes governs the accrual of Rouviere's product

liability claims under N.Y. C.P.L.R.—§ 214(5), or the more plaintiff-friendly § 214-

c(2).  For the purposes of this appeal, we will assume, without deciding, that the

case is governed by § 214-c(2), under which "a cause of action accrues in the toxic

tort context when a plaintiff discovers an injury."  *In re World Trade Ctr. Lower*

*Manhattan Disaster Site Litig.*, 758 F.3d 202, 211 (2d Cir. 2014) (citing N.Y. C.P.L.R.

§ 214-c(2)).  Importantly, the New York Court of Appeals has held that this accrual

happens "when the injured party discovers the primary condition on which the

claim is based," and not when "the connection between [the] symptoms and the

6

injured's exposure to a toxic substance is recognized."  *Id*. (alteration in original)

(quoting *In re New York Cnty. DES Litig.*, 89 N.Y.2d 506, 509 (1997)).  Accordingly,

accrual does not depend "on the medical sophistication of the individual plaintiff

[or] the diagnostic acuity of his or her chosen physician."  *Id*. (alteration in original)

(internal quotation marks omitted).

### c.    Product Liability Application

Rouviere's product liability claims are time barred because there is no

genuine dispute of material fact that she discovered "the manifestations or

symptoms" of her injury from the hip replacement more than three years before

she filed suit in 2018.  *Id.* (quoting *DES Litig.*, 89 N.Y.2d at 514).  In her Rule 56.1

statement, she did not dispute that she experienced the relevant symptoms from

2012 to 2014.  She connected those symptoms to her hip replacement in her

amended complaint.   Even if, as she argues on appeal, Rouviere did not

subjectively identify the impingement of the hip replacement products as the

cause of these symptoms before her revision surgery in 2016, that would not

prevent her claim from accruing.  *See id.*  And as the district court concluded,

Rouviere's claim that her pre-2016 symptoms were due to her pre-existing

conditions contradicts her position from an earlier stage in the litigation. *See Rouviere*, 645 F. Supp. 3d at 171–75; *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding.").

Accordingly, we affirm summary judgment on Rouviere's product liability claims.

### d.    Breach of Warranty

Rouviere's breach of warranty claims are also time barred because they accrued, at the latest, on the date of her surgery in August 2012, which is the last day the relevant products could have been delivered and was more than four years before she sued in May 2018. *See Schrader v. Sunnyside Corp.*, 297 A.D.2d 369, 371 (2d Dep't 2002) (accrual occurs for express and implied warranty claims when "the product is placed in the stream of commerce or at the time of sale by the manufacturer").

### e.    Equitable Estoppel and Tolling

We also affirm the decision to deny the application of equitable estoppel or

tolling to Rouviere's claims. "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Meyer*, 89 F.4th at 130 (emphasis omitted) (quoting *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007)). To establish either equitable estoppel or tolling, Rouviere must demonstrate that specific actions by defendants kept her from timely bringing suit. *See id*.

Here, Rouviere's argument on behalf of equitable tolling and/or estoppel relies on defendants' alleged concealment of the defectiveness of their products and their misrepresentations to the U.S. Food and Drug Administration ("FDA") about the safety of their products. But even assuming those allegations are true, those are the same allegations that form the substance of Rouviere's failure-to-warn claims. *See Meyer*, 89 F.4th at 130 (explaining that the misrepresentations that trigger tolling cannot be the same misrepresentations underpinning the claim).

Furthermore, Rouviere fails to explain what "subsequent and specific action" DePuy and Stryker took, beyond their initial alleged omissions and representations about the safety of their products, to prevent her from timely

9

suing. *See Putter v. North Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (2006). None of the allegedly fraudulent actions concern Rouviere. She has not shown that either defendant misrepresented the appropriate statute of limitations or sought to prevent her suit after she began to experience symptoms from her hip replacement. Furthermore, she has not shown that she did not file her suit within the statute of limitations because she reasonably relied on the defendants' alleged misrepresentations to the FDA. *See Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006).

Accordingly, we affirm the district court's denial of equitable tolling and estoppel and affirm the district court's decisions because Rouviere's claims are time barred.

\* \* \*

We have considered Rouviere's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court. Rouviere's pending motion to file a sur-reply is denied as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

